[Civ. No. 9390. First Appellate District, Division One.—February 13, 1935.]

BUD GALLICHOTTE, Appellant, v. CALIFORNIA MU- TUAL BUILDING & LOAN ASSOCIATION (a Corpo- ration) et al., Respondents.

Percy V. Long, Bert W. Levit, William H. Levit and George H. Hauerken for Appellant.

Bohnett, Hill & Cottrell for Respondents.

HELD, J., *pro tem.*—The plaintiff and appellant, the owner of an automobile, certain household furniture, and also of miscellaneous painter's equipment, supplies and apparatus, insured such property against loss by fire. Subsequently, the insured property was in part destroyed by fire, and the insurers paid to plaintiff the loss thereby occasioned to him. Following sufficient assignments, this action was instituted by plaintiff to recover on behalf of the insurers the amount paid plaintiff under the several policies covering the property destroyed. The plaintiff is the owner of a lot in the city of San Jose, on which lot was situated a dwelling house, garage and paint shop. The property destroyed by fire was contained in these several buildings. The defendant California Mutual Building & Loan Associa-

tion, a corporation, at the time of the fire referred to was the owner of a vacant lot situated to the southwest of and adjoining plaintiff's property. The defendants Howard and Pilgram were employees of the California Mutual Building & Loan Association, and on June 9, 1932, were assigned by their employer to the task of burning the weeds growing on the vacant lot of the defendant association. While these employees were so engaged, a fire was discovered on the adjoining premises of plaintiff, and this fire caused the damage sued for herein.

The complaint here is in two counts. The first charges that defendants negligently set a fire, and negligently allowed it to spread to the premises of plaintiff, with the resultant destruction of plaintiff's property. The second count pleads an ordinance of the city of San Jose which makes it unlawful to burn "refuse" at any place within the city limits. The definition of "refuse" is sufficiently extensive to cover the grass which was burned by defendants. Defendants admit the setting of the fire by them on the lot of the association and deny the other material allegations of the complaint. The trial court found that at the time of the setting of the fire by defendants, an ordinance in terms as pleaded in the complaint was in full force and effect, and that at said time there was located · on the lot of defendant association a large quantity of dry grass and dry weeds. The court, however, found that the fire started by defendants did not extend or spread to plaintiff's property. There are also findings that defendants exercised more than ordinary precaution in protecting adjoining property before starting the fire, and in attending the fire to prevent its spread to other property; and also that plaintiff's property was not burned or damaged or destroyed as the proximate result of the fire started by defendants.

■ Judgment herein was in favor of defendants. Plaintiff appeals and contends that a finding of lack of negligence on the part of defendants, and the exercise of care by them, is immaterial in view of the admitted fact that defendants violated the ordinance set up in the complaint. The violation of an ordinance is negligence *per se*. In *Alechoff* v. *Los Angeles Gas & Electric Corp.*, 84 Cal. App. 33, 39 [257 Pac. 569], it is said: "It is an axiomatic truth, that every person while violating an express statute, is a wrongdoer, and as such is *ex necessitate* negligent in the eye of the law."

An act which is performed in violation of an ordinance or statute is presumptively an act of negligence, but the presumption is not conclusive and may be rebutted by a showing that the act was justifiable or excusable under the circumstances. Until so rebutted, it is conclusive. (*Mora* v. *Favilla,* 186 Cal. 199, 202 [199 Pac. 17]; *Rath* v. *Bankston,* 101 Cal. App. 274, 281 [281 Pac. 1081].)

In *Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195 [215 Pac. 675], there is quoted with approval the following from Shearman & Redfield on Negligence: " 'The only question remaining open on this point is whether conclusive proof of the violation of such a statute or ordinance is also conclusive proof of negligence. Some courts have held that it is, and some that it is not. . . . The violation of such a law, if left without explanation or excuse, is conclusive of negligence, but it may be excused. . . . If some good excuse appears, which would be a sufficient defense to an action for the penalty imposed by the law . . . then the law is not really violated.' "

In *Berkovitz* v. *American River Gravel Co., supra,* it was held that the fact that a tail-light on a motor truck was burning at a time when the vehicle was three or four blocks distant from the place of the accident, might furnish an excuse for a violation of the statute requiring such light to be burning at all times while the vehicle was on a public highway.

It is well settled that the fact which will excuse a technical violation of a statute or ordinance must result from causes or things beyond the control of the person charged with the violation. (45 Cor. Jur., p. 731, sec. 121.)

In *Kelley* v. *Anderson,* 15 S. D. 107 [87 N. W. 579], it was said: "It being shown by the evidence that the fires were set in one of the months in which fires upon stubble lands are prohibited . . . the evidence . . . tending to prove that there was no negligence on the part of the defendant in setting his straw stacks on fire at that season of the year, in view of the fact that the ground was wet, and in places covered with snow, was inadmissible."

█ Evidence of due care on the part of the defendants does not furnish an excuse or justification for the negligence presumed to arise on proof of violation of the ordinance. No attempt was made here on the trial to show any excuse or justification. The violation was a deliberate one, and

not the result of a cause beyond the control of defendants. The presumption of negligence is, therefore, conclusive in this case. Negligence of defendants having been established, still they cannot be held liable unless such negligence was the proximate cause of the injury to plaintiff, and the burden of proof in this regard is on plaintiff. As was said in *County of Alameda* v. *Tieslau*, 44 Cal. App. 332, 337 [186 Pac. 398, 400] : ''By proving the defendants' negligence without in some way fastening that negligence to the injury, a case is not made out.'' But as was also said there: ''These rules, however, do not require demonstration of the connection between the proved or admitted negligence and the resultant injury. It is not necessary that an eye-witness be produced to testify directly to the fact.'' The rule is expressed in our statutes in section 1826 of the Code of Civil Procedure and applied in *Bethlehem Corp.* v. *Industrial Acc. Com.*, 181 Cal. 500, 502 [185 Pac. 179, 7 A. L. R. 1180].

It is admitted that at about 1 o'clock P. M. on June 9, 1932, respondent employees set fire to a quantity of dry grass situated on the vacant lot of respondent association. There is testimony in the record that a few days previously the grass and weeds in the center of the lot were cut down by a mowing machine, but allowed to remain on the premises. There is also testimony that the fringe of grass and weeds on the outer edge of the lot was in part wet down and in part cut with a hand scythe in the forenoon of June 9th. The fire was set by respondent employees at a point on the vacant lot about ninety feet southerly from the south line of the premises of plaintiff. Respondent Howard, who was in charge of the work for his employer, the respondent association, testified that at the time the fire was started the wind was blowing from the northwest, and the records of the United States Weather Bureau show the velocity of the wind between 1 P. M. and 3 P. M. of that day to have been from ten to twelve miles per hour. Howard testified also that it would require about two hours to burn over the vacant lot, and that plaintiff's property was on fire forty-five minutes after the fire was started on the vacant lot. He was asked: ''Q. Of course the fire spread over towards Mr. Gallichotte's property after it left the corner, didn't it?'' His answer was in the affirmative, and he stated also that the fire ''crept over towards the paint shed''. After

Howard discovered that plantiff's property was on fire, the grass on the vacant lot was still burning.

The witness Bravo arrived at the scene after appellant's property was on fire, and he testified that the "whole field was afire"; that there were flames and smoke in the vicinity of appellant's buildings, and that these buildings were burning at the time; that "there was fire and smoke all around the lot and among the buildings in that vicinity". A number of witnesses testified that the grass on the vacant lot and immediately adjacent to the buildings of appellant was burned. The assistant chief of the San Jose Fire Department was present at the scene, and testified that when he arrived the fire and smoke "seemed to be all over the lot", and the fire was "still smoldering all over the lot". At that time the buildings of appellant were entirely in flames. This witness, with an experience in the fire department of twenty-five years, was asked the following questions and gave answers as follows: "Q. Is there any doubt in your mind as to where the fire on Mr. Gallichotte's property started from? . . . A. I can't tell you what started it; if you want what I think started it, I can tell you. Q. That is what I want, just your guess? A. Well, it was started by that grass fire, your Honor, that is my opinion. . . . Q. That is purely a guess, and that is all? A. Just as I told you; it is not impossible that it would start some other way, but it would be very improbable owing to the conditions that day and that a grass fire was burning there and the looks of the fence. All things considered I would guess and say that it started from the grass fire." We have here an experienced man, in possession of the facts as to the conditions existing at the time. He makes the deduction that the fire which destroyed the buildings of plaintiff found its origin in the fire which was set within less than an hour before by the respondent employees, within a distance of one hundred feet.

It is true that no one actually saw the contact that produced the fire on the premises of appellant, but the rule, as we have stated, is that the law does not require demonstration or absolute certainty, because such proof is rarely possible. This rule has found application in cases like the present one. (*Paiva* v. *California Door Co.*, 75 Cal. App. 323 [242 Pac. 887]; *Kennedy* v. *Minarets & Western Ry. Co.*, 90 Cal. App. 563 [266 Pac. 353]; *Viera* v. *Atchison etc. Ry.*

*Co.,* 10 Cal. App. 267 [101 Pac. 690] ; *Dibble* v. *San Joaquin L. & P. Corp.,* 47 Cal. App. 112 [190 Pac. 198].)

Not only is the inference that the fire set by respondent employees spread to the premises of appellant a logical and reasonable one, deducible from the proven facts, but it would seem to be the only one that could reasonably be drawn from those facts. And thus the question of proximate cause becomes one of law. (*Traylen* v. *Citraro,* 112 Cal. App. 172 [297 Pac. 649] ; 45 Cor. Jur. 1321; Restatement of the Law of Torts [American Law Institute], sec. 434.) There is here no question of conflict of evidence, for it would seem that the most favorable view that might be taken of the evidence adduced in behalf of defendants leads to but one conclusion, viz.: that the fire which caused the damage for which recovery is sought herein spread to the premises of plaintiff from the fire set by respondent employees on the vacant lot of respondent association. The trial court therefore erred in its conclusion to the contrary.

The judgment is reversed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 15, 1935, and an application·by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 11, 1935.